```
 1
 2                                                          O
 3
 4
 5
 6
 7
 8                     UNITED STATES DISTRICT COURT
 9                    CENTRAL DISTRICT OF CALIFORNIA
10
11  KAREN SEWASKY,¹            )    NO. EDCV 10-147-MAN
                               )
12            Plaintiff,       )
                               )    MEMORANDUM OPINION
13       v.                    )
                               )    AND ORDER
14  MICHAEL J. ASTRUE,         )
    Commissioner of Social Security, )
15                             )
              Defendant.       )
16  _____)
17
```

Plaintiff filed a Complaint on February 8, 2010, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). On March 3, 2010, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on November 12, 2010, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of

---

¹ On April 6, 2010, plaintiff filed a Notice of Errata and Request To Correct the Spelling of Plaintiff's Name ("Notice of Errata") noting that plaintiff's name was misspelled in the Summons and Complaint. According to plaintiff's Notice of Errata, the correct spelling of plaintiff's surname is Sewasky, not Sawasky.

benefits or, alternatively, for further administrative proceedings; and defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for a period of disability and DIB. (A.R. 9, 89-95, 112.) Plaintiff, who was born on August 4, 1966,[2] claims to have been disabled since June 13, 2005, due to bipolar disorder and affective mood disorder.[3] (A.R. 91, 101, 105; Joint Stip. at 2.) Plaintiff has past relevant work experience as an "inside salesperson with responsibility for training and personnel." (A.R. 33, 106.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 38-42, 45-49), plaintiff requested a hearing (A.R. 51, 55-56). On February 18, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge F. Keith Varni (the "ALJ"). (A.R. 17-35.) Vocational expert Joseph Mooney also testified. (A.R. 32-34.) On April 3, 2009, the ALJ denied plaintiff's claim (A.R. 9-16), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision

---

[2] At the time of the alleged disability onset date, plaintiff was 38 years old, which is defined as a "younger" individual. (A.R. 15; 20 C.F.R. § 404.1563.)

[3] Plaintiff's initial application alleged disability due to bipolar disorder (A.R. 105); however, plaintiff later claimed disability due to affective mood disorder as well (*see, e.g.*, Joint Stipulation ("Joint Stip.") at 2).

2

(A.R. 1-3). That decision is now at issue in this action.

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff "meets the insured status requirements of the Social Security Act through December 1, 2010." (A.R. 11.) The ALJ also found that plaintiff has not engaged in substantial gainful activity since June 13, 2005, the alleged onset date of her claimed disability. (*Id.*) The ALJ further found that, at the time of the alleged onset date, plaintiff was a "younger individual" with "at least a high school education." (A.R. 15.) The ALJ determined that plaintiff has "a severe mental impairment from substance abuse and a resulting mood disorder." (A.R. 11.) The ALJ also determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR. Part 404, Subpart P, Appendix 1." (A.R. 11-12.)

The ALJ determined that plaintiff has the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but mentally, [plaintiff] can perform routine, repetitive entry level work that is minimally stressful, requires no contact with the general public and only superficial interpersonal contact with co-workers and supervisors." (A.R. 12.)

The ALJ concluded that plaintiff is unable to perform her past relevant work. (A.R. 14.) However, having considered plaintiff's age, education, work experience, and RFC, as well as the testimony of the vocational expert, the ALJ found that jobs exist in the national economy

3

that plaintiff could perform, including those of cleaner, housekeeper, packager, and assembler. (A.R. 15.) Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act from June 13, 2005, through the date of his decision. (A.R. 16.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d

1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff makes the following two claims: (1) the ALJ did not consider the findings of plaintiff's treating clinicians properly; and (2) the ALJ failed to pose a complete hypothetical to the vocational expert. (Joint Stip. at 2.)

**I. The ALJ Committed No Error In Considering The Findings Of Plaintiff's Clinicians.**

To establish the existence of a medically determinable impairment, an ALJ must rely on evidence from "acceptable medical sources." Social Security Ruling 06-03p, 2006 SSR LEXIS 5, *3; *see* 20 C.F.R. §

404.1513(a). Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech language pathologists. 20 C.F.R. § 404.1513(a)(1)-(5). While only "'acceptable medical sources' can give . . . medical opinions," Social Security Ruling 06-03p, 2006 SSR LEXIS 5, *3, an ALJ *may* consider evidence from "other sources," such as therapists and clinicians, to understand the nature and severity of a claimant's impairment as well as how the impairment affects a claimant's ability to work, 20 C.F.R. § 404.1513(d)(emphasis added). Ultimately, the ALJ has the discretion to determine the appropriate weight to accord the opinion of a source other than an "acceptable medical source." *See, e.g.,* Diaz v. Shalala, 59 F.3d 307, 313-14 (9th Cir. 1995)(ALJ may determine weight to give to opinion of "other source"); Social Security Ruling 06-03p, 2006 SSR LEXIS 5, *7-8, *15-16 (noting that the ALJ "generally should explain the weight given to opinions from . . . 'other sources'").

Plaintiff claims that the ALJ failed to consider properly three treatment notes from clinicians at San Bernardino Department of Behavioral Health ("SBDBH"). In the first treatment note, dated November 2, 2006, the clinician:[4] (1) determined that plaintiff's initial indications of dysfunction were "unemployed, social isolation, hopeless, [and] helpless" (A.R. 174); (2) noted that plaintiff had coherent thought processes, fair insight, poor judgment, congruent affect, problems with concentration, but no problems with memory,

---

[4] Although difficult to read, it appears that Maria E. Morgan, CTI, completed the treatment note, which was later signed by Davis Powell, MFT. (A.R. 173-77.)

"perceptual process/hallucinations," or "thought content/delusions" (A.R. 176); (3) diagnosed plaintiff with "Major Depressive Disorder, Recurrent, Moderate" (A.R. 177); and (4) assessed plaintiff with a GAF score of 47 (A.R. 177). The second treatment note,[5] dated April 3, 2007, indicated that plaintiff's: (1) appearance/hygiene, behavior, speech, perceptual process, thought process, thought content, and memory were within normal limits; (2) mood/affect was "depressed" and "anxious"; and (3) insight and judgment were "good." (A.R. 168-69.) In this second treatment note, plaintiff was assessed with a GAF score of 42. (A.R. 169.) The third treatment note,[6] dated November 8, 2009, had similar findings to plaintiff's April 3, 2007 treatment note, with the notable exception that plaintiff was assessed with a GAF score of 48. (A.R. 171-72.)

Contrary to plaintiff's contention, the ALJ properly considered the findings of plaintiff's clinicians in determining the severity and nature of plaintiff's impairment and how her impairment affects plaintiff's ability to perform work. Specifically, the ALJ considered the clinicians' findings in: (1) assessing whether plaintiff's impairment or combination of impairments met or equaled a Listing; (2) determining whether plaintiff's mental impairment was severe; (3) considering the medical record and opinion evidence for purposes of determining plaintiff's RFC; and (4) assessing plaintiff's credibility.

---

[5] The second treatment note appears to be completed by V. Chatez (A.R. 168), who plaintiff contends is her treating clinician (Joint Stip. at 3).

[6] The name of the clinician who completed this treatment note is illegible.

7

In his decision, the ALJ found that plaintiff has "a severe mental impairment from substance abuse and a resulting mood disorder (20 C.F.R. § 404.1520(c))." (A.R. 11.) In determining that plaintiff's impairment or combination of impairments did not meet or equal a Listing, the ALJ specifically referenced the clinicians' findings in determining plaintiff's limitations in daily living, social functioning, and concentration, persistence, or pace. For example, in support of his determination that plaintiff has no restrictions in activities of daily living, the ALJ cited normal mental status examinations of plaintiff in which she was reported to be "alert and oriented, . . . [with] no memory deficits, normal thought processes and content, no delusions/paranoia and fair insight and judgment." (A.R. 12.) The ALJ specifically cited, *inter alia*, treatment notes from the clinicians at SBDBH. (*Id.*) Similarly, in determining that plaintiff has "mild to moderate difficulties" in social functioning, the ALJ referenced plaintiff's normal mental examinations as well as plaintiff's "mood disorder," which the ALJ noted "might cause some interference in social interaction." (*Id.*) In support of his finding, the ALJ cited the treatment notes from plaintiff's clinicians at SBDBH. (*Id.*) Lastly, in finding that plaintiff has no difficulties with regard to concentration, persistence, or pace, the ALJ noted that "[o]n mental examination, there [wa]s no evidence of any cognitive deficits, and [plaintiff] was alert and oriented in all four spheres. Memory was within normal limits, and there were no abnormal thought processes or delusions." (*Id.*) The ALJ again cited treatment notes from plaintiff's clinicians at SBDBH. (*Id.*)

Beyond considering the clinicians' treatment notes for purposes of determining whether plaintiff's impairment met or equaled a Listing, the

ALJ also considered their treatment notes in determining whether plaintiff's mental impairment was "severe." (A.R. 11, 13.) In his decision, the ALJ noted that "[plaintiff] alleges disability due to bipolar disorder." (A.R. 13.) Notwithstanding plaintiff's allegations, the ALJ noted that "State Agency review psychiatrists concluded that [plaintiff] did not have a severe impairment." (*Id.*) "However, giving [plaintiff] the benefit of the doubt, [the ALJ found that] she has a severe mental impairment since she does receive mental health services and medication from [SBDBH] for a mood disorder." (*Id.*) Thus, it appears that the ALJ considered the findings of the clinicians from SBDBH in determining that plaintiff's mood disorder was a severe impairment -- *i.e.*, an impairment that "more than minimally limits [plaintiff's] ability to perform basic work activities." (A.R. 11.)

The ALJ also considered the findings of the SBDBH clinicians in determining plaintiff's RFC. In his decision, the ALJ generally referenced the treatment notes from SBDBH, noting that plaintiff "received routine outpatient treatment for complaints of mood swings, depression and anxiety." (A.R. 13.) In so doing, the ALJ specifically cited Exhibit 3F -- an exhibit which includes all three treatment notes from plaintiff's treating clinicians. (*Id.*) Further, the ALJ generally discussed the mental examinations performed by plaintiff's treating clinicians and other medical sources. The ALJ noted that plaintiff's "[m]ental status examinations have been normal. [Plaintiff] was alert and oriented, had no memory deficits, normal thought processes and content, no delusions/paranoia and fair insight and judgment (Exhibit 2F, p. 15; Exhibit 3F, pages 4, 7 and 10; Exhibit 8F, p. 13)." (A.R. 12.) Additionally, the ALJ noted that there was "no evidence of any

cognitive deficits, . . . . [and plaintiff's m]emory was within normal limits and there were no abnormal thought processes or delusions (Exhibit 2F, p. 15; Exhibit 3F, pages 4, 7 and 10; Exhibit 8F, p. 13)." (*Id.*) The ALJ also referenced the GAF scores assessed by plaintiff's treating clinicians and treating physician, Sean Faire, M.D., noting that they "went from 42 (Exhibit 3F, p. 7) to 55 (Exhibit 3F, p. 4)." (*Id.*) Further, in finding the assessed GAF scores to be not credible, the ALJ specifically cited to pages 7 and 10 of Exhibit 3F which contain the GAF assessments from some of the SBDBH clinicians. (A.R. 14.)

Lastly, in assessing plaintiff's credibility, the ALJ again referenced the findings of the SBDBH clinicians. The ALJ found, *inter alia*, that plaintiff's "laundry list of mental symptoms . . . are rebutted by the records from [SBDBH] in which mental status examinations were consistently normal." (A.R. 14.) The ALJ also found that plaintiff's testimony that "she frequently stays in bed and needs hygiene prompts" was "exaggerated and unsupported by treating source records, showing normal mental status examination. [Plaintiff] was alert and oriented, had no memory deficits, normal thought processes and content, no delusions/paranoia and fair insight and judgment (Exhibit 2F, p. 15; Exhibit 3F, pages 4, 7 and 10; Exhibit 8F, p. 13)." (A.R. 14.) Again, the ALJ specifically cited to exhibits which contain some of the treatment records from clinicians at SBDBH.

Accordingly, because the ALJ plainly made both general and specific references to their findings throughout his decision, plaintiff's contention that the ALJ failed to consider the findings of plaintiff's treating clinicians is without merit.

10

To the extent plaintiff contends that the ALJ committed error by not providing specific and legitimate reasons for rejecting the clinicians' "opinions" regarding plaintiff's GAF scores, plaintiff's contention is unpersuasive. As an initial matter, plaintiff's clinicians are not "acceptable medical sources" or "treating sources,"[7] and thus, there is no requirement that the ALJ give specific and legitimate reasons for disregarding their opinions. Social Security Ruling 06-03p, 2006 SSR LEXIS 5 (noting that "only 'acceptable medical sources' can give . . . medical opinions"); Bain v. Astrue, 319 Fed. Appx. 543, 546 (9th Cir. 2009)(noting that an ALJ has only to provide "germane" reasons for discrediting the opinion of a non-acceptable medical source)(*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Kus v. Astrue, 276 Fed Appx. 555, 556 (9th Cir. 2008)(noting that "[a]s with other witnesses, the ALJ was required to take into account evidence from [non-acceptable medical sources] 'unless he or she expressly determine[d] to disregard such testimony' and gave reasons for doing so")(*quoting* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)). Further, an ALJ is not required to "discuss every piece of evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)(citation and internal quotations omitted).

---

[7] Plaintiff relies on Benton ex rel. Benton v. Barnhart, 331 F.3d 1030 (9th Cir. 2003), and claims that her clinicians should be considered "treating sources" because they "were working as [a] team headed by a physician." (Joint Stip. at 4-5.) While plaintiff's treating physician, Sean Faire, M.D., completed an Outpatient Medication Record, prescribed plaintiff medication, and worked at SBDBH with plaintiff's clinicians, there is no evidence that Dr. Faire worked with plaintiff's clinicians as part of a medical team. Moreover, there is no evidence that the clinicians were supervised by Dr. Faire, and thus, the clinicians' opinions cannot be attributed to Dr. Faire. Accordingly, plaintiff's contention is without merit.

11

Moreover, the ALJ gave specific and legitimate reasons for determining that plaintiff could work, notwithstanding these assessed GAF scores. The ALJ noted that plaintiff's GAF scores were "not supported by the objective evidence," because "[o]n examination, [plaintiff's] mood was depressed and anxious but mental status examinations were normal (Exhibit 3F, pages 4, 7 and 10; Exhibit 8F, p. 13)." (A.R. 14.) The ALJ further noted that: "[t]reating records . . . show good improvement, the denial of serious mental symptoms, stable mood, that [plaintiff] was doing well . . . with no medication side effects"; and there was "no reason why [plaintiff] could not do work within the [assessed RFC]." (*Id.*) Thus, the ALJ did give specific and legitimate reasons for his determination that plaintiff's assessed GAF scores did not establish an inability to work.

Plaintiff also contends that the ALJ failed to provide specific and legitimate reasons for rejecting the clinicians' findings regarding plaintiff's depression and trouble concentrating. (Joint Stip. at 5-6.) With respect to plaintiff's depressed state, plaintiff contends that it "would have an impact on her ability to be around people and properly interact with people at her job." (Joint Stip. at 5.) With respect to her difficulty concentrating, plaintiff claims that it "would indicate that she would be unable to remember what her job tasks would be or how to complete a job assignment." (*Id.*)

Significantly, the ALJ noted that plaintiff's mood was depressed on examination, but that treating records, including records from SBDBH clinicians, "show[ed] good improvement, the denial of serious mental symptoms, stable mood, that [plaintiff] was doing well . . . and no

12

reason why [plaintiff] could not do work with the [assessed RFC]." (A.R. 14.) With respect to concentration difficulties, the ALJ, in finding that plaintiff did not meet a Listing, found that plaintiff did not have any difficulties concentrating, because, as noted *supra*, mental examinations showed "no evidence of cognitive deficits," memory "within normal limits," "no abnormal thought processes or delusions," and that plaintiff "was alert and oriented in all four spheres." (A.R. 12.) The ALJ cited evidence from SBDBH clinicians, as well as from acceptable medical sources, in support of his finding. It thus appears that the ALJ appropriately rejected the clinicians' findings that plaintiff is too depressed to work with and around people and has difficulties concentrating that would render her unable to work.

Even assuming *arguendo* that the ALJ committed error in rejecting the SBDBH clinicians' findings, any such error was harmless, because plaintiff's assessed RFC does not appear to be inconsistent with the clinicians' findings that plaintiff is depressed and has some difficulty concentrating. In pertinent part, the ALJ recognized plaintiff's severe mental impairment from substance abuse and her resulting mood disorder (A.R. 11), and thus, the ALJ included appropriate limitations in plaintiff's RFC -- restricting plaintiff to "routine, repetitive entry level work that is minimally stressful, requires no contact with the general public and only superficial interpersonal contact with co-workers and supervisors" (A.R. 12). In other words, plaintiff's RFC does not appear to be inconsistent with any limitations arising out of plaintiff's depressed state and poor concentration.

Accordingly, there is no basis for finding reversible error in

connection with the ALJ's consideration of the findings of plaintiff's SBDBH clinicians.

**II. The ALJ Posed A Complete Hypothetical To The Vocational Expert.**

Hypothetical questions posed to a vocational expert must set forth all the claimant's limitations. *See* Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989); Embrey v. Bowen, 859 F.2d 418, 422 (9th Cir. 1988). The hypothetical questions, however, need not include all conceivable limitations that a favorable reading of the record may suggest -- only those limitations the ALJ finds to exist. *See, e.g.,* Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Magallanes, 881 F.2d at 756-57; Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986).

Here, the hypothetical question posed to the vocational expert included all limitations the ALJ found to exist. To the extent plaintiff contends that the ALJ committed error by not including additional mental limitations, plaintiff's contention is without merit. In pertinent part, plaintiff's clinicians found that plaintiff was depressed and anxious; had feelings of hopelessness, helplessness, and social isolation; had concentration problems, fair insight, and poor judgment; and assessed plaintiff with GAF scores of 42, 47, and 48. The clinicians did not opine on whether plaintiff had any resulting work-related limitations.[8] Therefore it is unclear what additional

---

[8] At best, the only limitation included in the clinicians' treatment notes is plaintiff's problems with concentration; however, as the ALJ included the limitation that plaintiff be restricted to routine, repetitive work, no reversible error was committed.

14

limitations, if any, the ALJ failed to include in his hypothetical to the vocational expert. Moreover, the ALJ addressed plaintiff's "mental problems" in his hypothetical question by limiting plaintiff to routine, repetitive, entry-level work that is minimally stressful, requires no contact with the general public, and requires only a superficial degree of interpersonal contact with co-workers and supervisors. (A.R. 33-34.) Accordingly, no reversible error was committed by the ALJ.

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Neither reversal of the Commissioner's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration. IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 26, 2011

*Margaret A. Nagle*
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

15